**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 25 2012, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BONNIE K. WOOTEN**
Carthage, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEREMY W. LAWSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 30A01-1112-CR-592 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry K. Snow, Judge
Cause No. 30D01-1105-FD-862

**June 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Jeremy W. Lawson appeals his conviction of Strangulation,[1] a class D felony, Domestic Battery,[2] a class D felony, and Battery,[3] a class A misdemeanor, and Lawson was adjudged to be a habitual offender.[4] Lawson presents the following restated issues for review:

  1.    Is Lawson entitled to a new trial because the trial judge was biased against him?

  2.    Was the evidence sufficient to sustain Lawson's conviction of battery as a class A misdemeanor?

We affirm in part, reverse in part, and remand with instructions.

The facts favorable to the convictions are that at all times relevant to this appeal, Lawson lived with his wife, Kimberly, and his 11-year-old stepson, I.W. On May 25, 2011, Lawson and I.W. were wrestling and Lawson was hurt. This angered Lawson, who threatened I.W. that every time I.W. hurt Lawson, "I'm gonna smack your mom right in the face". *Transcript* at 38. The next morning, Kimberly and Lawson drove to I.W.'s fifth-grade graduation. While there, Kimberly and Lawson resumed an ongoing argument concerning Kimberly and another student's father, whom Lawson accused Kimberly of looking for at the graduation ceremony. The argument continued when they went outside to the parking lot. Kimberly attempted to remove the license plate from the vehicle they drove to graduation because the license plate was in her and her older son's names. Lawson pushed Kimberly away from the license plate. Kimberly started to call the police, but then told Lawson he

---

[1]   Ind. Code Ann. § 35-42-2-9(b) (West, Westlaw through legislation effective May 31, 2012).
[2]   I.C. § 35-42-2-1.3(a) (West, Westlaw through legislation effective May 31, 2012).
[3]   I.C. § 35-42-2-1(a)(1)(A) (West, Westlaw through legislation effective May 31, 2012).
[4]   Ind. Code Ann. § 35-50-2-8 (West, Westlaw through legislation effective May 31, 2012).

should leave and she would ride home with someone else. As they walked back toward the school, Lawson balled his hand into a fist and drew the fist back, but then walked back to the car. Kimberly went back into the school and found I.W. The two returned to the parking lot, where Lawson was still waiting in the car. They got into the car and Lawson drove away. On the way home, Lawson and Kimberly argued loudly and Lawson "was driving crazy." *Id.* at 43.

When they arrived home, Kimberly again attempted to "get the sticker or the plate off the car". *Id.* at 5. Lawson pushed Kimberly down in the gravel driveway, hurting her knee and causing her to feel pain. When Kimberly tried to get up, Lawson grabbed her throat and held her down for about ten seconds. During that time, Kimberly had difficulty breathing. Kimberly managed to break free and ran inside the house. Once inside, she wedged a knife in the door such that Lawson could not open it. Lawson kicked the door in an attempt to enter the house, which prompted Kimberly to call 9-1-1. Lawson left the scene and was gone when police arrived a short time later.

Lawson was charged with strangulation as a class D felony, two counts of domestic battery, one as a class D felony and one as a class A misdemeanor, battery as a class A misdemeanor, and was alleged to be a habitual offender. A jury found Lawson guilty as charged, after which Lawson admitted to being a habitual offender. The trial court did not enter judgment of conviction on the class A misdemeanor domestic battery conviction based upon its conclusion that it was a lesser included offense of the class D felony domestic battery conviction. The trial court set the matter for sentencing. Before sentencing, however, the trial judge, Terry Snow, recused. With the agreement of the parties, Judge Richard

3

Culver was appointed special judge to preside over Lawson's sentencing. Lawson thereafter received an aggregate, eight-year sentence.

1.

Lawson contends he is entitled to a new trial because Judge Snow was biased against him. Apparently, shortly after the trial, Judge Snow discovered that "he was the elected Prosecutor at a time when some of Mr. Lawson's prior felonies would have been committed that were used to enhance the habitual finding." *Transcript* at 174. On November 9, 2011, Judge Snow entered the following order: "The court becoming aware of conflict, now recuses and by agreement of the pties [sic], Honorable Richard Culver is selected as special judge." *Appellant's Appendix* at 55.

The law presumes a judge is unbiased and unprejudiced. *Everling v. State*, 929 N.E.2d 1281 (Ind. 2010); *see* Ind. Judicial Conduct Canon 2.2 ("[a] judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially"). A judge has the discretionary power to recuse *sua sponte* whenever "any semblance of judicial bias or impropriety comes to the judge's attention." *Flowers v. State*, 738 N.E.2d 1051, 1060 (Ind. 2000). Moreover, if a judge harbors actual prejudice in a case, justice requires the judge to *sua sponte* disqualify himself or herself from the case. *Flowers v. State*, 738 N.E.2d 1051. As our Supreme Court has observed, "The mere assertion that certain adverse rulings by a judge constitute bias and prejudice does not establish the requisite showing." *Voss v. State*, 856 N.E.2d 1211, 1217 (Ind. 2006) (quoting *Ware v. State,* 567 N.E.2d 803, 806 (Ind. 1991)). "The record must show actual bias and prejudice against the defendant before a conviction will be reversed on the ground that the trial judge should have been so disqualified."

4

*Flowers v. State*, 738 N.E.2d at 1061. In reviewing for actual bias and prejudice, we examine the judge's conduct in presiding over the proceedings. *See Smith v. State*, 770 N.E.2d 818, 823 (Ind. 2002) (to rebut the presumption that a judge was unbiased, "a defendant must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy").

In the present case, Lawson contends that Judge Snow's bias against him was reflected in two ways: (1) Judge Snow was involved as the prosecutor in a case that led to a conviction that formed the basis for the habitual offender allegation against Lawson; and (2) Judge Snow ruled against Lawson with respect to a pretrial motion in limine filed by the State. Beginning with the second claim, the pretrial motion in question concerned a recording in Lawson's possession that allegedly contained portions of phone calls between Lawson and Kimberly. Lawson alleged that these phone calls would have exonerated him of the strangulation and domestic battery charges. The State sought exclusion of the recordings via a pretrial motion in limine,[5] which the trial court granted, conditionally. The court determined that they could be used only for impeachment purposes, and thus were inadmissible if Kimberly did not remember making the phone calls or remember what she said during those phone calls.

---

[5] The reason for the request was explained in the motion as follows:
> The defendant has tendered two disks containing approximately seventy-two excerpts from phone conversations recorded by defendant. The phone conversations are without foundation as to when they occurred and under what circumstances. Further, the phone conversations are often incomplete or have blank portions in the dialogue. In addition, the phone conversations contain extraneous matters, foul language, references to matters that constitute impermissible 404(b) and character evidence, and constant self-serving statements by the defendant.

*Appellant's Appendix* at 39.

At trial, Lawson's attorney asked Kimberly if she remembered indicating to Lawson that she would drop the charges against Lawson. She was then specifically asked if she remembered telling Lawson that she would say that he did not strangle her. Kimberly testified that she did not recall saying that. She was then asked, "Would it refresh your memory if you heard such a tape? You said that you didn't recall some things and would that help if we played it?" *Id.* at 61. Kimberly again testified that she did not remember "saying any of that." *Id.* At that point, the State objected and the objection was sustained. After several more attempts to question Kimberly about conversations between her and Lawson, which were met with additional sustained objections, defense counsel moved on from the topic.

Lawson did not attempt to introduce the recordings or submit an offer to prove. Therefore, he waived any claim that the ruling was erroneous. *See Carter v. State*, 932 N.E.2d 1284, 1287 (Ind. Ct. App. 2010) ("failure to make an offer to prove results in a waiver of the asserted evidentiary error"). In any event, it is not apparent that Judge Snow erred in ruling that the recordings were inadmissible, much less that the ruling was animated by personal bias against Lawson. Moreover, adverse rulings by a trial judge are not sufficient reasons to believe the judge has a personal bias or prejudice *per se. See Taylor v. State*, 587 N.E.2d 1293 (Ind. 1992). This claim is without merit.

The second claim of actual bias asserted by Lawson revolves around the fact that Judge Snow was the county prosecutor in at least one case that culminated in a conviction that formed the basis for the habitual offender determination against Lawson in the present case. In *Dishman v. State*, 525 N.E.2d 284 (Ind. 1988), the defendant claimed that the trial

6

court erred in denying his motion for change of judge where the judge had been the county prosecuting attorney immediately before assuming the bench. In that capacity, the judge had prosecuted the defendant in the two cases on which a habitual offender finding in that case was based. The Supreme Court rejected that argument, stating:

> In this situation, the trial judge would have erred had there been any factual contesting of the prior convictions. However, such was not the case here. Once the certified convictions were presented to the jury, the determination of the status as habitual criminal was virtually a foregone conclusion. There is no indication in this situation that the trial judge's personal knowledge of appellant's prior convictions in any way played a part in the jury's determination as to the status of habitual offender.

*Id*. at 285. Similarly, in the present case, after the jury returned guilty verdicts on the strangulation, domestic battery, and battery charges, Lawson admitted the habitual offender allegation. Thus, Judge Snow's personal knowledge of Lawson's prior convictions did not play any part in the habitual offender finding. *See Dishman v. State*, 525 N.E.2d 284.

In summary, the record does not reflect that Judge Snow's conduct evinced actual bias and prejudice toward Lawson. Therefore, Lawson is not entitled to a new trial on this basis. *See Voss v. State*, 856 N.E.2d 1211.

2.

Lawson contends the evidence was not sufficient to sustain his conviction of battery as a class A misdemeanor. As charged in this case, a conviction of battery as a class A misdemeanor required proof of the following: Lawson (1) knowingly or intentionally touched Kimberly (2) in a rude or angry manner (3) resulting in bodily injury to Kimberly. *See* I.C. § 35-42-2-1(a)(1)(A). Lawson contends the State failed to present sufficient evidence that Kimberly suffered bodily injury.

7

Both sides appear to agree that this charge stems from Lawson's act of pushing Kimberly while they were arguing in the school parking lot following I.W.'s graduation ceremony. Although there was sufficient evidence to demonstrate that Lawson pushed Kimberly in a rude or angry manner, the State concedes that there was no evidence that Kimberly suffered bodily injury as a result. The State asks us to remedy this error by remanding to the trial court with instructions to enter a judgment on the lesser-included offense of battery as a class B misdemeanor. We agree.

"[W]hen a conviction is reversed because of insufficient evidence, we may remand to the trial court to enter a judgment of conviction upon a lesser-included offense if the evidence is sufficient to support the lesser offense." *Perry v. State*, 962 N.E.2d 154, 159 (Ind. Ct. App. 2012). I.C. § 35–42–2–1(a) provides: "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor." As set out above, the evidence demonstrated that Lawson touched (i.e., pushed) Kimberly in a rude or angry manner while the two were arguing in the school parking lot. This was sufficient to show that Lawson committed class B misdemeanor battery. We reverse the judgment of the trial court on this count and remand with instructions to enter judgment of conviction for class B misdemeanor battery and to modify the sentence on that count accordingly.

Judgment affirmed in part, reversed in part, and remanded with instructions.

MAY, J., and BARNES, J., concur.